**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

EDWIN J. JENSON,

                              Plaintiff,

        - v -                                          Civ. No. 9:14-CV-1337
                                                            (MAD/DJS)
CRAIG HACKETT, *et al.*,

                              Defendants.

**APPEARANCES:**                            **OF COUNSEL:**

EDWIN J. JENSON
Plaintiff, *Pro Se*
581 Hall Road
Afton, New York 13730

LAW FIRM OF FRANK W. MILLER             CHARLES C. SPAGNOLI, ESQ.
Attorneys for Defendant                 FRANK W. MILLER, ESQ.
6575 Kirkville Road
East Syracuse, New York 13057

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

On October 31, 2014, *pro se* Plaintiff Edwin Jenson commenced this action, pursuant to 42

U.S.C. § 1983, asserting claims arising from his incarceration at Chenango County Correctional

Facility. Dkt. No. 1, Compl. Following initial review pursuant to 28 U.S.C. § 1915(e), Plaintiff's

sole remaining claim is a claim for deprivation of due process in violation of the Fourteenth

Amendment against Defendant Correctional Officer John Mullin, Jr. Dkt. No. 5, Dec. & Order,

dated Dec. 11, 2014. Presently before the Court is Defendant's Motion for Summary Judgment.

Dkt. No. 17, Def.'s Mot. Summ. J. Plaintiff has not filed a response. *See* Docket. For the reasons

that follow, the Court recommends that Defendant's Motion for Summary Judgment be **DENIED**.

# I. BACKGROUND[1]

During 2013 and the first half of 2014, Plaintiff was incarcerated at Chenango County Correctional Facility ("CCCF") on multiple occasions. Dkt. No. 17-1, Def.'s Rule 7.1 Statement of Material Facts ("Def.'s SMF") at ¶ 3. On June 13, 2014, Plaintiff was released from CCCF on the condition that he enter a drug treatment program. *Id.* at ¶ 5. Several days after his release, Defendant Sergeant Craig Hackett,[2] an employee at CCCF, received a telephone call from a security officer at the Chenango County Courthouse, who informed Hackett that Plaintiff had appeared in County Court for violating his drug treatment program. *Id.* at ¶ 6. The security officer told Hackett that Plaintiff had stated in Court that he had used the drug Suboxone while he had been incarcerated at CCCF. *Id.* Plaintiff is claimed to have stated that he received the drug from another inmate. *Id.* Sergeant Hackett subsequently received similar telephone calls from an individual in the Chenango County District Attorney's Office, Jonathan Dunckel, a probation officer with the Chenango County Probation Department, and Jim Everard, the coordinator of Chenango County's Drug Treatment Court. *Id.* at ¶¶ 9 & 11-12. Each of these individuals stated that Plaintiff had admitted to receiving

---

[1] Plaintiff failed to oppose Defendant Mullin's Motion for Summary Judgment. Pursuant to this District's Local Rules, "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y.L.R. 7.1(a)(3). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that the court may in its discretion opt to conduct a review of the entire record even where one of the parties has failed to file a 7.1 statement. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). Due to Plaintiff's *pro se* status, the Court has opted to review the entire summary judgment record to ascertain the undisputed material facts. The Court will cite to the facts as set forth in Defendants' Rule 7.1 Statement of Facts only when properly supported by the record. Dkt. No. 17-1, Defs.' Rule 7.1. Statement of Material Facts ("Defs' SMF"); *see also GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

[2] Plaintiff's claims against Defendant Hackett were dismissed in the initial review, pursuant to 28 U.S.C. § 1915(e), conducted by the Honorable Mae A. D'Agostino, United States District Judge. Dec. & Order, dated Dec. 11, 2014.

Suboxone from another inmate while incarcerated at CCCF. *Id.* Lieutenant Christopher Miles, the Administrator at CCCF, also received a telephone call from an official with the County Court regarding Plaintiff's use of Suboxone while at CCCF. *Id.* at ¶ 13.

Anticipating that Plaintiff would be remanded to CCCF, Sergeant Hackett prepared four disciplinary charges against Plaintiff based on the conversations that he had regarding Plaintiff's admission of using Suboxone while at CCCF. *Id.* at ¶ 16. The charges accused Plaintiff of violating the following CCCF rules: (1) any act that is a violation of a New York State law; (2) "[c]onduct which disrupts or interferes with the safety, security, or good order of the facility"; (3) "[m]isuse of medication or medical supplies or being in possession of any unauthorized medication at any time"; and (4) "[l]ending, borrowing, selling, or trading of any property between inmates." Dkt. No. 17-4, Aff. of Craig Hackett, dated Sept. 2, 2015, at ¶ 20 & Ex. A. The charges alleged that:

> This inmate was released form [sic] this facility on June 13, 2014. During that week he tested positive during a urinalysis test for suboxine [sic]. While being questioned for this he stated he got the drug from another inmate while incarcerated at the Chenango County Correctional Facility.
> *Id.*, Ex. A.

On June 27, 2014, Plaintiff was remanded to CCCF. *Id.* at ¶ 17. Hackett served Plaintiff with the four disciplinary charges when he arrived at the facility. *Id.* Plaintiff claims that he was placed in administrative segregation while he was awaiting a disciplinary hearing. Compl. at p. 3.[3]

On July 19, 2014, a disciplinary hearing was conducted by Defendant Correctional Officer John Mullin, Jr.[4] Def.'s SMF at ¶¶ 20 & 24. Prior to the hearing, Mullin discussed the charges with

---

[3] Citations are to the pagination automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

[4] A recording of the hearing was made, which was provided to the Court. Dkt. No. 17-3, Aff. of John Mullin, Jr., dated Sept. 2, 2015, Ex. A.

Sergeant Hackett and personally contacted Jonathan Dunckel and Jim Everard, who both confirmed Plaintiff's admissions regarding the use of Suboxone at CCCF. *Id.* at ¶¶ 21-22. At the hearing, Mullin recited each of the four charges, which Plaintiff acknowledged he had received. *Id.* at ¶ 26. Plaintiff pled not guilty to each charge and declined to call any witnesses. *Id.* at ¶ 27.

Plaintiff was then afforded an opportunity to respond to the charges. Mullin asked Plaintiff to explain why the CCCF had received multiple phone calls stating that Plaintiff had admitted to obtaining and using Suboxone while in CCCF. Dkt. No. 17-3, Aff. of John Mullin, Jr., dated Sept. 2, 2015, at ¶ 22. Plaintiff stated that "nothing happened" while he was at the facility. *Id.*, Ex. A. Plaintiff stated that he had a prescription for Suboxone, which he resumed taking upon his release from CCCF on June 13, 2014. *Id.* When he failed the urinalysis test, Plaintiff claims that he lied and told the drug treatment officials that he "could have" taken the Suboxone while at CCCF. *Id.* Plaintiff denied having stated that he did take the Suboxone while at CCCF. *Id.* Plaintiff claimed that he lied in order to avoid being immediately remanded to CCCF. *Id.* Plaintiff further argued that the fact that he continued to fail drug tests during the two weeks that he was out of CCCF supported his contention that he was taking the drug outside of the facility, because it would not have remained in his system that long if he had been taking it while in CCCF. *Id.* Plaintiff stated that "no evidence" was offered that conduct charged had occurred and that the entire basis of the charges was hearsay. *Id.* Plaintiff also expressed concern that the allegations could lead to criminal charges. *Id.* At that point, Mullin claimed that he was going to get a tissue, but in fact went to talk to Sergeant Hackett, who assured Mullin that the disciplinary hearing would have no effect on Plaintiff's criminal prosecution. *Id.* at ¶¶ 29-30. Mullin returned, and shortly thereafter, the hearing concluded.

Five days later, Defendant Mullin entered a disposition of guilty on each charge. *Id.* at ¶ 33 & Exs. B, C, D, & E. The disposition forms stated the following facts: "[w]hile incarcerated in this facility [Plaintiff] admitted to Jim Everard that he too [sic] drugs while in jail. The drug known as Suboxine [sic] was used which he received from another inmate that was transferred to state prison." *Id.* Mullin states that he determined Plaintiff was guilty based "[o]n the information he received from Sgt. Hackett, and [his] own personal conversations with Mr. Dunckel and Mr. Everard." *Id.* at ¶ 34. Plaintiff was penalized by a 180 day sentence in administrative segregation, a loss of three hours of visitation time, and a $15 fine. *Id.* at ¶¶ 37-40. Plaintiff claims that he appealed the decision based on insufficiency of evidence, but the appeal was denied. Compl. at pp. 3-4.

Plaintiff commenced this action on October 31, 2014. *See* Compl. In his Complaint, Plaintiff asserts a claim for deprivation of procedural due process based on the insufficiency of the evidence presented at the hearing.[5] *Id.* at p. 2.

## II. LEGAL STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the

---

[5] Plaintiff's Complaint also raised an Eighth Amendment conditions of confinement claim that was dismissed by Judge D'Agostino during her initial review, conducted pursuant to 28 U.S.C. § 1915(e).

facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When a motion for summary judgment is unopposed, the court may "grant summary

judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3); *see also* N.D.N.Y.L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion."). "If the evidence adduced in support of the summary judgment motion does not meet [the movant's] burden [of production], 'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'" *Amaker v. Foley*, 247 F.3d 677, 681 (2d Cir. 2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). "An unopposed summary judgment motion may also fail where the undisputed facts fail to 'show that the moving party is entitled to judgment as a matter of law.'" *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).

### III. DISCUSSION

Defendant Mullin's Motion seeks summary judgment on three grounds: (1) on the merits, Plaintiff's disciplinary hearing satisfied the requirements of due process; (2) Plaintiff failed to exhaust his administrative remedies on his due process claim; and (3) Defendant Mullin is entitled to qualified immunity. Dkt. No. 17-2, Def.'s Mem. of Law.

### A. Whether the Disciplinary Hearing Provided Plaintiff with Adequate Due Process

In order to establish a procedural due process claim arising out of a prison disciplinary proceeding, a plaintiff must show that he (1) possessed an actual liberty interest and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000).

A prisoner's liberty interest is "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Sealey v. Giltner*, 116 F.3d 47, 52 (2d Cir. 1997). Whether the conditions of a segregation amount to an atypical and significant hardship "turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Acre v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998). The Second Circuit has held that, under "normal conditions," confinement in a special housing unit (SHU) for a period of up to 101 days is not an atypical hardship, while confinement for more than 305 days is an atypical hardship. *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Colon v. Howard*, 215 F.3d 227, 231-32 (2d Cir. 2000). The Second Circuit has stated that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer v. Richards*, 364 F.3d at 64-65 (quoting *Colon v. Howard*, 215 F.3d at 232). Here, Plaintiff was sentenced to 180 days of administrative segregation. Mullin Aff. at ¶¶ 37-38. From the record before the Court, it is unclear how long Plaintiff actually served in administrative segregation, although the Complaint alleges that Plaintiff had been in administrative segregation for approximately 120 days as of the date of filing. Compl. at p. 4. Furthermore, there is no record as to the conditions Plaintiff faced while in administrative segregation. Defendants do not argue that Plaintiff's confinement in administrative segregation did not constitute an atypical and significant hardship. Therefore, for the purposes of this Motion, the Court will assume that Plaintiff has been deprived of a liberty interest, and will proceed to consider whether the disciplinary hearing conducted by Defendant Mullin satisfied the requirements of due process.

*-8-*

Although due process does not afford a prison inmate "'the full panoply of rights' due to a defendant in a criminal prosecution . . . . an inmate is entitled to [1] advance written notice of the charges against him; [2] a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; [3] a fair and impartial hearing officer; and [4] a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 & 563-67 (1974)). In this case, Plaintiff claims that he was deprived due process because there was no evidence presented against him at the hearing.[6] Compl. at pp. 3-4.

The Supreme Court has held that a prison disciplinary decision must be "supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The requirements of due process are

> met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced . . .' Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.
> *Id.* at 455-56

The Second Circuit, however, "has not construed the phrase 'any evidence' literally" and instead looks to whether there was any "reliable evidence" supporting the decision. *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004); *see also Sira v. Morton*, 380 F.3d 57, 76-77 (2d Cir. 2004). "This proposition is grounded in the understanding that due process mandates not just a hearing before a

---

[6] In his Memorandum of Law, in addition to arguing that the disposition was based on reliable evidence, Defendant also argues that Plaintiff received adequate notice of the charges. Def.'s Mem. of Law at pp. 3-4. Defendant reads the Complaint as raising an adequacy of notice claim based on Plaintiff's statement that the evidence "was not presented to [Plaintiff] before the hearing." Compl. at p. 2. However, the basis of Plaintiff's claim is that no evidence was offered at any time that he committed the misconduct, not that he received inadequate notice of the disciplinary charges.

deprivation of liberty, but requires more precisely that an inmate 'receive a fair hearing.'" *Johnson v. Greiner*, 2007 WL 2844905, at *10 (S.D.N.Y. Sept. 28, 2007) (quoting *Sira v. Morton*, 380 F.3d at 77)).

Defendant argues that his decision was supported by reliable evidence; specifically, "three different corrections officers at CCCF received information . . . from multiple outside sources . . . [who] stated that [Plaintiff] had admitted to obtaining and using a drug called Suboxone inside the CCCF." Def.'s Mem. of Law at p. 6. Defendant contends that this evidence was reliable because it was consistent and "came from public servants who worked in law enforcement or were affiliated with the local courts." *Id.* Defendant notes that district courts in the Second Circuit have held that hearsay may constitute reliable evidence. *Id.* at p. 5 (citing *Buchanan v. Warden*, 2014 WL 3778205, at *3 (S.D.N.Y. July 31, 2014); *Young v. Coughlin*, 1988 WL 34815, at *2 (S.D.N.Y. Apr. 5, 1988)). Defendant further notes that unsworn accounts may possess evidentiary weight. *Id.* at p. 6 (citing *Freeman v. Rideout*, 808 F.2d 949, 950 (2d Cir. 1986); *Young v. Coughlin*, 1988 WL 34815, at *7-8).

The Court finds that Defendant Mullin has not met his burden of showing that his determination was supported by reliable evidence entitling him to summary judgment as a matter of law. The only evidence offered at the hearing were the misbehavior reports prepared by Defendant Hackett. To the extent Defendant Mullin refers to personal conversations he and other CCCF corrections officers had with Chenango County Court officials outside of the hearing, the substance of those conversations was never offered as evidence at the hearing in any form, whether by testimony or written statement. A hearing officer's personal, off-the-record conversations cannot constitute evidence supporting a disposition.

As to the misbehavior reports, it is true that a misbehavior report may constitute evidence in a disciplinary hearing. *See, e.g.*, *Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214-15 (W.D.N.Y. 2010). In this case, however, the Court is unable to find, as a matter of law, that the misbehavior reports are reliable evidence. The misbehavior reports prepared by Defendant Hackett are based on several levels of hearsay; the reports relate admissions Plaintiff supposedly made to Chenango County Court officials, who then relayed those admissions to Hackett. At the hearing, Plaintiff strongly denied having made such admissions or having engaged in the misconduct charged. Although hearsay is admissible in the context of a prison disciplinary hearing, *see Louis v. Ricks*, 2002 WL 31051633, at *13 n.25 (S.D.N.Y. Sept. 13, 2002), it must be reliable hearsay. *See Sira v. Morton*, 380 F.3d at 78-80; *see also Shabazz v. Bezio*, 511 F. App'x 28, 32 (2d Cir. 2013) (finding no evidence in the record indicating that hearing officer verified reliability of misbehavior report and citing *Luna v. Pico*, 356 F.3d 481, 489 (2d Cir. 2004) for discussion of when evidence is "reliable"). Here, the sum total of the allegations in the misbehavior reports are that Plaintiff "admitted to ingesting a drug known as suboxine [sic]" while incarcerated at CCCF." Hackett Aff., Ex. A. The misbehavior reports do not identify any of the circumstances under which this admission was made. The Court cannot find as a matter of law that misbehavior reports containing Plaintiff's bare admission to the charged misconduct, without any of the circumstances under which such admission was made, and which Plaintiff strongly denied at the hearing, constitute reliable evidence. Accordingly, the Court recommends that Defendant's Motion for Summary Judgment on the merits of Plaintiff's due process claim be **DENIED**.

## B. Whether Defendant Mullin is Entitled to Qualified Immunity

Defendant Mullin also argues that he is entitled to qualified immunity because a reasonable

law enforcement officer in his position may have reasonably believed that Plaintiff's disciplinary hearing satisfied the requirements of due process. Def.'s Mem. of Law at pp. 11-12. The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether an official protected by qualified immunity may be held liable for an alleged unlawful action turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time the action was taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Lewis v. Cowan*, 165 F.3d 154, 166 (2d Cir. 1999). To determine whether a right was clearly established for purposes of qualified immunity, courts must consider "(1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question; and (3) whether under preexisting law a reasonable defendant would have understood that his or her actions were unlawful." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010).

It has been clearly established since the Supreme Court's decision in *Superintendent v. Hill* that due process requires "some evidence to support the findings made in the disciplinary hearing." *Zavaro v. Coughlin*, 970 F.2d at 1153 (quoting *Superintendent v. Hill*, 472 U.S. at 457). Although "neither [the Second C]ircuit nor the Supreme Court has clearly defined standards for determining what constitutes 'some evidence,'" *Sira v. Morton*, 380 F.3d at 81, here, as described above, there are questions of fact as to whether Defendant Mullin's determination was based on reliable evidence.

Accordingly, the Court recommends that Defendant's Motion for Summary Judgment be **DENIED** insofar as he argues that he is entitled to qualified immunity.

### C. Whether Plaintiff's Due Process Claim Must be Dismissed for Failure to Exhaust

Finally, Defendant Mullin argues that Plaintiff's due process claim must be dismissed because he failed to exhaust his administrative remedies.  Def.'s Mem. of Law at pp. 8-10.

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).  Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  *Id*. at 524; *Ross v. Blake*, __ S. Ct. __, 2016 WL 3128839, at *5 (2016) (stating that mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement).  Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  "The exhaustion inquiry thus requires [a court to] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures."  *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009).  The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.  *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, every county correctional facility must maintain a formal inmate grievance program.  N.Y. COMP. CODES R. & REGS. tit. 9, § 7032.1.  As explained in the Affidavit of

Lieutenant Christopher Miles, CCCF has a four-tiered grievance process.  Dkt. No. 17-5, Aff. of Christopher Miles, dated Sept. 4, 2015, at ¶ 15.  The inmate must first complete and submit a grievance form to his or her housing unit officer, who will attempt to resolve the grievance informally.  *Id.* at ¶ 15(a).  If the housing unit officer is unable to resolve the matter, or if the inmate is dissatisfied with housing unit officer's proposed resolution, the inmate may request that the grievance be formally filed and forwarded to CCCF's Grievance Coordinator.  *Id.*  The Grievance Coordinator then conducts an investigation of the complaint and issues a written response.  *Id.* at ¶ 15(b).  The inmate may then appeal the decision of the Grievance Coordinator to the Chief Administrative Officer, who reviews the grievance form and findings of the Grievance Coordinator's investigation, and issues a written decision.  *Id.*  Finally, the inmate may appeal the decision of the Chief Administrative Officer to the New York State Commission of Corrections' Citizen's Policy and Complaint Review Council ("CPCRC"), which makes the final administrative determination.  *Id.*

Lieutenant Miles, who is the Jail Administrator at CCCF, states that he has reviewed the grievances Plaintiff filed at CCCF and found that Plaintiff did not grieve to exhaustion any grievance on his due process claims.  *Id.* at ¶¶ 17-18 & 21-22.  On October 26, 2014, Plaintiff filed a grievance which complained that the penalties imposed on him at the disciplinary hearing were disproportionate to the charged offenses.  *Id.* at ¶ 18 & Ex. E.  The Grievance Coordinator denied this grievance because, under New York State regulations, an inmate may not grieve the sanctions imposed at a disciplinary hearing.  *Id.* (citing N.Y. COMP. CODES R. & REGS. tit. 9, § 7032.4(h)).  Plaintiff did not appeal this grievance, *see id.*, Ex. E., but three days later, on October 29, 2014, filed another grievance complaining that he had not been presented with the evidence against him at the

disciplinary hearing, *id.* at ¶ 20 & Ex. F. The Grievance Coordinator investigated and denied the grievance. *Id.*, Ex. F. Plaintiff agreed to accept the decision of the Grievance Coordinator and did not appeal the grievance to either the Chief Administrative Officer or the CPCRC. *Id.* Based on the Affidavit of Lieutenant Miles, Defendant Mullin argues that Plaintiff has failed to exhaust his administrative remedies and that his due process claims should therefore be dismissed.

This Court is not persuaded by Defendant's arguments because it does not agree that Plaintiff's procedural due process claims are a grievable matter. The applicable regulation states that "[g]rievances regarding dispositions or sanctions from disciplinary hearings . . . are not grievable." N.Y. COMP. CODES R. & REGS. tit. 9, § 7032.4(h); *see also id.* § 7032.2 (stating that "[d]ispositions, surcharges, and sanctions resulting from disciplinary hearings . . . shall not be the subject of a grievance"). Defendant does not cite and the Court is not aware of any authority interpreting this provision. Defendant, through the Affidavit of Lieutenant Miles, states that the provision means that "[a]lthough an inmate cannot grieve the penalties received during a disciplinary hearing, an inmate *can* grieve the alleged lack of due process during the hearing." Miles Aff. at ¶ 20. The Court finds no basis for this distinction. Instead, the Court believes that the provision encompasses all claims arising from a disciplinary hearing—including claims complaining of the procedure at a disciplinary hearing. Such claims are properly raised through the appeal process, not the grievance process. *See* N.Y. COMP. CODES R. & REGS. tit. 9, § 7006.10(a) ("The inmate shall have the right to appeal the hearing officer's disposition and any sanction to the chief administrative officer.").

Under similar Department of Corrections and Community Supervision ("DOCCS") regulations, it is well-established that the PLRA's exhaustion requirements do not apply to due

process claims arising from a disciplinary hearing. DOCCS regulations state that: "[a]n individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable." N.Y. COMP. CODES R. & REGS. tit. 7, § 701.3(e). Interpreting this provision, the Second Circuit has held that an inmate's appeal of a disciplinary hearing decision "constitutes exhaustion under the PLRA for purposes of rendering [a] due process claim ripe for adjudication in federal court." *Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir. 2009); *see also Sease v. Phillips*, 2008 WL 2901966, at *6 (S.D.N.Y. July 25, 2008) ("Courts in this district have held that IGP exhaustion is unnecessary where there is an appeal of a disciplinary hearing decision and the behavior underlying the claim has been objected to in the appeals process or the alleged behavior occurred at the disciplinary hearing itself."); *Rivera v. Goord*, 253 F. Supp. 2d 735, 750 (S.D.N.Y. 2003) ("Nagy's alleged conduct in presiding over the disciplinary hearing was properly the subject of an appeal of the hearing."); *Flanagan v. Maly*, 2002 WL 122921, at *2 (S.D.N.Y. Jan. 29, 2002) ("When an inmate challenges the procedure at a disciplinary hearing that resulted in punishment, he exhausts administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal.").

The Court therefore finds that Plaintiff's procedural due process challenge to his disciplinary hearing is a non-grievable matter that was properly raised by administrative appeal. While the record before the Court is undeveloped as to whether Plaintiff appealed Defendant Mullin's decision, Plaintiff alleges that he did appeal the decision on due process grounds and that the appeal was denied. Compl. at pp. 3-4. Accordingly, the Court recommends that Defendant's Motion for Summary Judgment on the grounds of Plaintiff's failure to exhaust his administrative remedies be

*-16-*

**DENIED**.

### D. Plaintiff's Failure to Prosecute this Action

Because the Court recommends that Defendant Mullin's Motion for Summary Judgment be **denied**, this matter is ready for trial. However, the Court notes that Plaintiff has not taken any action to prosecute this matter since filing his Application to Proceed *in forma pauperis* on November 25, 2014. Dkt. No. 3. Plaintiff failed to respond to respond to Defendant's Motion for Summary Judgment, despite being granted an extension to do so, and to Defendant's Letter Motion requesting an order under 42 U.S.C. § 290dd-2. *See* Text Notice (Sept. 9, 2015) (directing Plaintiff to file response to Defendant's Letter Motion by October 5, 2015); Dkt. Nos. 19 & 28 (notifying Plaintiff of his deadline to respond to Defendant's Motion for Summary Judgment). Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962). Furthermore, under the Local Rules, a plaintiff's failure to take action for four (4) months is presumptively evidence of a failure to prosecute. N.D.N.Y.L.R. 41.2(a). Due to Plaintiff's apparent failure to prosecute this action, this Court recommends that the District Court order Plaintiff to provide, in writing, a status report regarding his intentions with regard to the prosecution of this matter. The Court recommends that Plaintiff be ordered to provide such a status report within **thirty (30) days** of any order on this Report-Recommendation and Order. Plaintiff is warned that his failure to provide such a such status report or otherwise abide by the Court's orders may result in the dismissal of his claims.

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant Mullin's Motion for Summary Judgment (Dkt. No. 17) be **DENIED**; and it is further

**RECOMMENDED**, that Plaintiff be ordered to file a status report informing the District Court of his intention to prosecute this action within **thirty (30) days** of any order on this Report-Recommendation and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).


Date:    September 8, 2016
         Albany, New York



Daniel J. Stewart
U.S. Magistrate Judge

-18-