**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**EDWIN J. JENSON,**

                            **Plaintiff,**

   vs.                                              **9:14-cv-1337
                                                                                                                 (MAD/DJS)**

**JOHN MULLIN, JR.,**

                            **Defendant.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**EDWIN J. JENSON**
581 Hall Road
Afron, New York 13730
Plaintiff *pro se*

**OFFICE OF FRANK W. MILLER**          **CHARLES C. SPAGNOLI, ESQ.**
6576 Kirkville Road                           **FRANK W. MILLER, ESQ.**
East Syracuse, New York 13057
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court is Magistrate Judge Stewart's September 8, 2016 Report-Recommendation and Order, to which Defendant John Mullin, Jr. has filed timely objections. *See* Dkt. Nos. 33, 34.

### II. BACKGROUND

In a complaint dated October 31, 2014, Plaintiff alleged that two employees of the Chenango County Correctional Facility ("CCCF") violated his civil rights during his incarceration there. *See* Dkt. No. 1. On December 11, 2014, this Court issued a Decision and Order finding

that only Plaintiff's Fourteenth Amendment due process claim asserted against Defendant Correctional Officer John Mullin, Jr. ("Defendant") survived *sua sponte* review under 28 U.S.C. § 1915(e). *See* Dkt. No. 5.

During the relevant times of this lawsuit, Plaintiff was incarcerated at the CCCF. *See* Dkt. No. 33 at 2. On June 13, 2014, Plaintiff was released on the condition that he enter a drug treatment program. *Id.* Shortly thereafter, Sergeant Craig Hackett, an employee at the CCCF, was informed that Plaintiff had appeared in Chenango County Court for violating his drug treatment program. Plaintiff reportedly received the drug Suboxone while he was incarcerated. *Id.* On June 27, 2014, Plaintiff was remanded to the CCCF and Sergeant Hackett served Plaintiff with four disciplinary charges for his alleged drug use while he was incarcerated at the CCCF. *Id.* at 3.

On July 19, 2014 Defendant Mullin conducted a disciplinary hearing on these charges. *Id.* Prior to the hearing, Defendant contacted the individuals who reported to Sergeant Hackett that Plaintiff had used Suboxone while he was incarcerated. *Id.* at 3-4. At the hearing, Defendant read each of the four charges to Plaintiff, who pled not guilty to each charge and declined to call any witnesses. *Id.* at 4. When asked to explain why the CCCF had received multiple reports that Plaintiff told the Chenango County Court that he took Suboxone while he was incarcerated, Plaintiff stated that he lied and told the drug treatment officials that he "could have" taken the Suboxone at the CCCF. *Id.* He told this lie to avoid being immediately remanded to the CCCF. *Id.* Five days after the hearing, Defendant Mullin entered a disposition of guilty on each charge.

*Id.* at 5. Plaintiff was penalized by a 180 day sentence in administrative segregation, a loss of three hours of visitation time, and a $15 fine.[1]

On September 8, 2015, Defendant filed a motion for summary judgment seeking to dismiss Plaintiff's remaining cause of action, which was unopposed by Plaintiff. *See* Dkt. No. 17. In a September 8, 2016 Report-Recommendation and Order, Magistrate Judge Stewart recommended that the Court deny Defendant's motion. *See* Dkt. No. 33. Specifically, Magistrate Judge Stewart found that (1) there is a question of fact as to whether Defendant's decision in the disciplinary hearing was based upon "reliable evidence," (2) Defendant is not entitled to qualified immunity, and (3) Plaintiff adequately exhausted his administrative remedies for his due process claim. *See* Dkt. No. 33.

Defendant filed objections to the Report-Recommendation and Order on September 16, 2016. *See* Dkt. No. 34. Defendant's objections raise four issues; first that no question of fact exists that Plaintiff was afforded adequate due process during his hearing, *id.* at 2-4, second that Magistrate Judge Stewart applied the wrong legal standard in interpreting the "reliable evidence" standard, *id.* at 4-7, third that Defendant is entitled to qualified immunity because it was not clearly established that he had to "place the indicia or reliability of [Plaintiff's] misbehavior reports on the hearing record," *id.* at 8-10, and fourth that Magistrate Judge Stewart applied the incorrect standard in evaluating whether Plaintiff exhausted his administrative remedies, *id.* at 10-12.

### III. DISCUSSION

---

[1] The Court assumes the parties' familiarity with the expanded factual background of this case contained in Magistrate Judge Stewart's September 8, 2016 Report-Recommendation and Order.

**A.      Standard of Review**

When a party files specific objections to a magistrate judge's report and recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

**B.      Defendant's Objections**

*1. Due Process "Reliable Evidence" Standard*

Defendant argues that Magistrate Judge Stewart applied the incorrect legal standard by finding that "for evidence in a hearing record to constitute 'reliable' evidence, the indicia of reliability of the evidence must also appear in the hearing record."  Dkt. No. 34 at 4.

Defendant agrees with Magistrate Judge Stewart's initial discussion of the "reliable evidence" standard, *see id.* at 4-5, which was stated as follows:

> The Supreme Court has held that a prison disciplinary decision must be "supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).  The requirements of due process are
>> met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced . . .'  Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in

4

> the record that could support the conclusion reached
> by the disciplinary board.
>
> *Id.* at 455-56.
>
> The Second Circuit, however, "has not construed the phrase 'any evidence' literally" and instead looks to whether there was any "reliable evidence" supporting the decision. *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004); *see also Sira v. Morton*, 380 F.3d 57, 76-77 (2d Cir. 2004). "This proposition is grounded in the understanding that due process mandates not just a hearing before a deprivation of liberty, but requires more precisely that an inmate 'receive a fair hearing.'" *Johnson v. Greiner*, [No. 03 Civ. 5276, 2007 WL 2844905, at *10 (S.D.N.Y. Sept. 28, 2007) (quoting *Sira v. Morton*, 380 F.3d at 77)).

Dkt. No. 33 at 9-10.

Defendant's argument with Magistrate Judge Stewart's decision is that the Second Circuit has never "categorically rule[d] that not only must the evidence itself appear in the hearing record, but that the indicia of reliability of the evidence must also appear in the hearing record." Dkt. No. 34 at 5. Essentially, Defendant argues that he was not required to include the indicia of reliability of the evidence that formed the basis for Plaintiff's disposition in the hearing record, and he can satisfy the requirements of the Due Process Clause by providing such information in the instant action before this Court.

Magistrate Judge Stewart found that

> Defendant Mullin has not met his burden of showing that his determination was supported by reliable evidence entitling him to summary judgment as a matter of law. The only evidence offered at the hearing were the misbehavior reports prepared by Defendant Hackett. To the extent Defendant Mullin refers to personal conversations he and other CCCF corrections officers had with Chenango County Court officials outside of the hearing, the substance of those conversations was never offered as evidence at the hearing in any form, whether by testimony or written statement.

Dkt. No. 33 at 10.

The Second Circuit has not specifically stated whether the indicia of reliability of evidence upon which a disciplinary disposition is made must appear in the hearing record, rather than on the record before the district court in a subsequent claim for a due process violation. Notwithstanding this lack of specific instruction, the Court finds that other analogous Supreme Court and Second Circuit cases support Defendant's position that his explanation of the reliability of his evidence, presented to the district court and not in the disciplinary hearing record, is sufficient satisfy due process requirements.

In *Ponte v. Real*, 471 U.S. 491 (1985), the Supreme Court considered the question of whether a prison disciplinary hearing officer must specifically state on the disciplinary record the reasons that an inmate was not allowed to examine a certain witness during his disciplinary hearing. The Supreme Court held that the Due Process Clause, while requiring some explanation for why an inmate was not allowed to question a proposed witness, does not require that explanation to be stated in the disciplinary charge or on the administrative record. Specifically, the Court stated that "our decision in *Wolff* [*v. McDonnell*, 418 U.S. 539 (1974)] does not indicate to us any need to now 'prescribe' as constitutional doctrine that the disciplinary board must state in writing at the time of the hearing its reasons for refusing to call a witness. Nor can we conclude that the Due Process Clause of the Fourteenth Amendment may only be satisfied if the administrative record contains support or reasons for the board's refusal." *Ponte*, 471 U.S. at 497. In explaining what is required under the Due Process Clause, the Court stated that "prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but that they may do so either by making the explanation a part of the 'administrative record' in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing." *Id.*

6

More recently, the Second Circuit cited *Ponte* favorably in the context of qualified immunity by holding that a disciplinary hearing officer may offer an explanation upon a subsequent challenge in district court of why he circumscribed an inmate's due process rights during a prison disciplinary hearing. In *Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004), the Second Circuit considered the due process implications of an inmate being presented with the substance of the evidence supporting his disciplinary ruling. *Id.* at 74-75. There, the disciplinary hearing official refused to inform the inmate of the identity of the confidential witnesses that supplied the evidence underlying the inmate's disposition or the substance of that witness's testimony. *Id.* at 75. The Second Circuit held that the hearing officer's decision to withhold the witness's identity was appropriate because the hearing officer provided the explanation that such disclosure "would have put another inmate's life in danger." *Id.* The hearing officer did not, either in the disciplinary record or "in the present record," explain why disclosing the substance of the informants' statements to the charged inmate would have posed a security risk. *Id.* In holding that the disciplinary hearing officer failed to provide a sufficient explanation for his actions, the Second Circuit concluded that "prison officials who decide to circumscribe inmates' procedural rights at disciplinary proceedings must offer a reasonable justification for their actions, if not contemporaneously, then when challenged in a court action." *Id.* (citing *Ponte v. Real*, 471 U.S. 491, 498-99 (1985)). Accordingly, the Court finds that Defendant need not include the explanation of why the evidence supporting Plaintiff's disposition was "reliable evidence" in the disciplinary report, and may offer sufficient justification for his decision by presenting such evidence to this Court.

Here, the only evidence offered at the hearing were the misbehavior reports prepared by Sergeant Hackett. Those misbehavior reports state that "[Plaintiff] was released from [CCCF] on

7

June 13, 2014. During that week he tested positive during a urinalysis test for suboxine (sic). While being questioned for this he stated he got the drug from another inmate while incarcerated at [CCCF]." Dkt. No. 17-3 at 12. The description in the disciplinary hearing log provides the following similar description: "[w]hile incarcerated in [CCCF] the [Plaintiff] admitted to Jim Everard that he too[k] drugs while in jail. The drug known as Suboxine (sic) was used which he received from another inmate that was transferred to state prison." *Id.* at 13. Thus, the hearing record contained some evidence that supported Plaintiff's guilty disposition. *See, e.g.*, *Louis v. Ricks*, No. 01 CIV. 9368, 2002 WL 31051633, *13 n.25 (S.D.N.Y. Sept. 13, 2002) (collecting cases holding that hearsay evidence is admissible in the context of a prison disciplinary hearing); *see also Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214-15 (W.D.N.Y. 2010) (holding that a misbehavior report constitutes some evidence upon which a disciplinary disposition may be based).

Defendant's explanations presented to this Court, supported by affidavits and other written statements, are sufficient to find that the hearsay evidence cited in Plaintiff's disciplinary hearing report was "reliable evidence" to support his guilty disposition. Sergeant Hackett's affidavit states that, shortly after June 13, 2014, he received a phone call from one of the court security officers at the Chenango County Courthouse reporting that Plaintiff "had just appeared in County Court for violating the terms of his drug treatment program" and that Plaintiff "had stated in court that he had been receiving and using a drug called Suboxone while he was in the CCCF[,]" which "was supplied by another inmate named Tim McCarthy . . . ." Dkt. No. 17-4 at ¶ 12. Tim McCarthy and Plaintiff lived in the same dorm area at CCCF and it would have been possible for them to "discreetly exchange contraband with [Plaintiff] without being seen." *Id.* at ¶ 15. Shortly after receiving the call from the court security officer, Sergeant Hackett received another call from the

8

Chenango County District Attorney's office. This call relayed the same information, that Plaintiff "stated in court that he had been receiving drugs from another inmate named Tim McCarthy while he was inside the CCCF." *Id.* at ¶ 16. During the subsequent few days, Sergeant Hackett spoke to two other individuals about Plaintiff, Jonathan Dunckel, who was Plaintiff's probation officer at the Chenango County Probation Department, and Jim Everard, who was the coordinator of the Chenango County Drug Treatment Court. *Id.* at ¶ 17. Both of these individuals confirmed the information that Sergeant Hackett received about Plaintiff, saying that Plaintiff "had admitted to receiving a drug called Suboxone from Tim McCarthy while he was incarcerated in the CCCF during May and early June." *Id.* Around that same time, Jail Administrator Lt. Miles informed Sergeant Hackett that he had received a phone call reporting that Plaintiff "had admitted to obtaining and using drugs from Tim McCarthy while he was in the CCCF during May and early June." *Id.* at ¶ 18. Sergeant Hackett affirmed that, prior to Plaintiff's disciplinary hearing, he "briefed [Defendant] C.O. Mullin on all the conversations I had over the previous few days regarding [Plaintiff]. I told him everything that I had learned from those phone calls and from Lt. Miles. Going into the hearing, [Defendant] knew everything that I knew." *Id.* at ¶ 34.

In a September 4, 2015 affidavit, Lt. Miles stated that he received a phone call from an official from the County Court telling him that "[Plaintiff] had admitted to illicitly using a medical drug called Suboxone in the CCCF during his last period of incarceration." Dkt. No. 17-5 at ¶¶ 8-9. Lt. Miles reported this phone call to Sergeant Hackett. *Id.* at ¶ 11.

Defendant's September 2, 2015 affidavit relays essentially the same information as the other two prison officials. Sergeant Hackett reported to Defendant that he received numerous calls from various officials, including Jim Everard and Jonathan Dunckel, reporting that Plaintiff admitted to using Suboxone while incarcerated at the CCCF. Dkt. No. 17-3 at ¶ 11. Further,

9

Defendant personally called Mr. Dunckel to confirm Plaintiff's statement. *Id.* at ¶ 13. Mr. Dunckel stated that Plaintiff "personally told him that he received and used Suboxone inside the CCCF during his recent period of incarceration. Mr. Dunckel told [Defendant] that [Plaintiff] said he received the Suboxone from another inmate named Tim McCarthy." *Id.* Defendant also personally spoke with Mr. Everard, who "confirmed that [Plaintiff] had admitted to receiving and using Suboxone in the CCCF. He also said that [Plaintiff] obtained the substance from another inmate." *Id.* at ¶ 15.

The Court finds that these explanations supporting the evidence contained in Plaintiff's disciplinary charge provide sufficient support that the misbehavior report was "reliable" evidence. Sergeant Hackett personally received four statements from outside individuals, each of whom were employed in a public service position, reporting Plaintiff's admission of drug use at the CCCF. Lt. Miles received an additional statement corroborating the reports received by Sergeant Hackett. Importantly, the witnesses to Plaintiff's statement reported that it was given in court at the Chenango County Courthouse. Such an admission being given in court, as opposed to in a casual conversation, sheds a favorable light on its reliability. Further, Defendant did not simply take Sergeant Hackett's word that these other individuals had reported Plaintiff's statements, rather Defendant personally contacted Mr. Everard and Mr. Dunckel to confirm their statements. Thus, the statement from Jim Everard referenced in the misbehavior report and relied upon in Plaintiff's disciplinary disposition was clearly reliable because it was supported by numerous other accounts of unbiased individuals and reported to multiple prison officials, all of whom reported the same, consistent information. Accordingly, the Court finds that Defendant satisfied the requirements of the Due Process Clause by providing some reliable evidence to support the guilty charge against Plaintiff at the prison disciplinary hearing.

*2. Qualified Immunity*

The doctrine of qualified immunity shields state officials from civil liability "for actions performed in the course of their duties if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). An individual has a clearly established right if "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful." *Id.* (quoting *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003)).

Even assuming that Defendant's explanation in the disciplinary record of the evidence relied upon was constitutionally insufficient to satisfy due process requirements, he is nonetheless entitled to qualified immunity because a reasonable officer would have believed that he could subsequently provide the reasoning supporting the evidence upon a challenge in district court. Given that the Second Circuit has not clearly stated whether the indicia of reliability for evidence must appear in the disciplinary record, it would be reasonable for a prison disciplinary hearing official to believe that he need not include such discussion in the administrative record. As discussed above, the Supreme Court and the Second Circuit have both held that, in the context of other due process concerns, a hearing official may present his reasoning for circumscribing an inmates rights either in the disciplinary record itself, or at a later point to the district court if the inmate challenges the hearing on due process grounds. *See Ponte*, 471 U.S. at 497; *Sira*, 380 F.3d at 75. Thus, Supreme Court and Second Circuit law "arguably supports" Defendant's position that he was not required to include such information in the disciplinary record. *See Luna*, 356 F.3d at 491 (holding that a defendant is entitled to qualified immunity in the absence of clear Second

11

Circuit or Supreme Court precedent and if there is other law that "at least arguably supports defendants' position."). Accordingly, even if Defendant's actions violated Plaintiff's due process rights, he is afforded qualified immunity for those actions since the requirement to place the indicia of reliability of evidence in the prison disciplinary record is not "clearly established" law in the Second Circuit.

As Defendant has provided sufficient evidence to be awarded summary judgment on the merits of Plaintiff's due process claims, the Court will not consider Defendant's remaining objections or the remainder of Magistrate Judge Stewart's Report-Recommendation and Order.

## IV. CONCLUSION

After carefully reviewing the parties' submissions, Magistrate Judge Stewart's September 8, 2016 Report-Recommendation and Order, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Stewart's September 8, 2016 Report-Recommendation and Order (Dkt. No. 33) is **REJECTED** for the reasons set forth herein; and the Court further

**ORDERS** that Defendant Mullin's motion for summary judgment (Dkt. No. 17) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 27, 2016
Albany, New York

Mae A. D'Agostino
U.S. District Judge

12